**Robert John STEPHENS, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Dec. 15, 1972.

Richard M. Sullivan, Brown & Chauvin, Louisville, for appellant.

Ed W. Hancock, Atty. Gen., Guy C. Shearer, Asst. Atty. Gen., Frankfort, for appellee.

REED, Justice.

Robert John Stephens was convicted after a trial by a jury. The jury found him guilty of armed robbery (KRS 433.140) and fixed his punishment at 10 years' confinement, the minimum penalty prescribed for this offense. Stephens appeals from the final judgment entered in accordance with the verdict. We have reviewed the record, considered the arguments advanced by Stephens' counsel, and have concluded that we are without authority to disturb the jury's decision. Therefore, we must affirm the judgment for the reasons later expressed.

Stephens was identified in court at his trial and on at least two previous occasions by Delores Lannan, a clerk at the Taylor and Baxter grocery store, as the man who displayed a pistol and robbed the store on December 23, 1969. Stephens' defense was an alibi that he was not in Jefferson County, Kentucky, on the date of the robbery but was in Conomaugh, Pennsylvania, his home town. Stephens testified to this effect and was supported by the testimony of seven other witnesses. The prosecution's case actually rested solely upon the eyewitness identification made by Delores Lannan.

■ The thrust of Stephens' argument on this appeal really amounts to a single contention, which is that he was entitled to a directed verdict of acquittal because the total evidence failed to establish a submissible case for the jury's determination. In order to sustain his position it would be necessary for us to conclude either that the testimony of the eyewitness was incredible as a matter of law or that the probative value of the evidence in support of Stephens' alibi was so conclusive and of such quality that it destroyed the probative value of the eyewitness evidence or so impaired it that no reasonable person could

conclude that Stephens was guilty beyond a reasonable doubt.

Stephens was a soldier in the United States Army stationed at Ft. Knox, Kentucky, in 1969. According to his story, he left Ft. Knox, Kentucky, on December 17, 1969, and reached his home in Conomaugh, Pennsylvania, on the morning of December 18, 1969; he was AWOL and desired to visit his friends and family. Stephens explained his various activities on December 23, the day of the robbery, and produced the testimony of John Yakulik, who testified that on December 23, 1969, he had talked with Stephens between 5:00 and 6:00 o'clock in the evening. Yakulik was a part-time police officer and stated that the reason for his conversation with Stephens was an investigation of a stolen car that bore Kentucky license plates.

Stephens said he returned to Jefferson County by Greyhound bus; at his arrival in Louisville on December 29, 1969, he was arrested. He also stated that he had bus ticket stubs in his possession at the time of his arrest and that these bus ticket stubs were available to him at Ft. Knox, but he did not produce them.

■ The witnesses in support of his alibi, except for Yakulik, were all members of his family or close friends. Yakulik stated that Stephens was only a casual acquaintance of his but that they had been in school together, that both of them had been in Vietnam, and that Conomaugh was a small town.

There were some inconsistencies or equivocal circumstances present in the accounts of activities on December 23, 1969, by the Pennsylvania witnesses. Although we do not say these inconsistencies were not understandable or explainable, we nevertheless note their presence as well as Stephens' failure to produce the bus ticket stubs which, of course, also may be understandable or explainable. The point is, these were relevant circumstances for the jury to consider in assessing the credibility of the evidence.

The testimony of Delores Lannan is positive and unequivocal. She said that Stephens came into the store about an hour and a half before the robbery and bought some cream soda. According to Delores Lannan, Stephens conversed with her on this occasion and she had adequate opportunity to observe him in a setting in which she was not in fear. She also said that when he returned she recognized him because of his previous visit. When he displayed what she described as a shiny pistol and handed her a note demanding money, she first thought it was a joke. Her recollection of his appearance on that occasion was again under circumstances not impelled by fear at the beginning of the incident. She said she handed him the money and he then left.

On January 1, 1970, she was called to the police station where she identified Stephens as the man who robbed her. After his indictment, Stephens was released on bond but failed to appear at the time set for trial. It was then revealed that he had been sent to Vietnam, and this explains in part the delay of the trial from March of 1970 to March 21, 1972. After he returned from service, he went back to Pennsylvania and it became necessary for the Commonwealth to secure his extradition from that state to Kentucky for trial. Delores Lannan went to Pennsylvania and again identified Stephens at the extradition hearing. She again identified him at his trial. By agreement, the deposition testimony of Stephens' alibi witnesses, which was all taken at the extradition proceedings in Pennsylvania, was read to the jury at his trial in Kentucky.

Stephens complains that the Commonwealth did not establish that the note, which Delores Lannan said was handed to her by the robber, was in his handwriting. His complaint, however, is not addressed to the admissibility of the evidence, but is apparently a contention that this circumstance weakens the Commonwealth's evi-

dence and strengthens the veracity of his alibi evidence.

Delores Lannan's testimony carefully described the man who robbed the store as to height, approximate weight, clothing, distinctive facial characteristics and tone of voice. Although she conceded on cross-examination that there was always a possibility of mistaken identity, she steadfastly, repeatedly and unequivocally identified Stephens as the robber.

Stephens relies on such cases as Davis v. Commonwealth, 290 Ky. 745, 162 S.W.2d 778 (1942); Fry v. Commonwealth, 259 Ky. 337, 82 S.W.2d 431 (1935); Matherly v. Commonwealth, Ky., 436 S.W.2d 793 (1968); Fyffe v. Commonwealth, 301 Ky. 165, 190 S.W.2d 674 (1945). We, however, are of the opinion that this case is governed by the rationale in Burton v. Commonwealth, Ky., 442 S.W.2d 583 (1969), wherein we said:

"We recognize the distinct possibility of mistaken identity in a case of this kind. But after the able closing argument of appellants' counsel there can be no doubt that the twelve jurors who heard the case were fully aware of it also. The accuracy of an identification, though it is based on memory and the senses alone, still lies within the inherent province of the jury to assess."

See also Merritt v. Commonwealth, Ky., 386 S.W.2d 727 (1965). In this case Stephens' counsel ably argued the issue of mistaken identity to the jury. The trial judge and the jury observed the demeanor of Delores Lannan and assessed the probative value of her evidence. The jury also weighed the probative value of the evidence introduced to establish the alibi. Under the circumstances presented, we are without authority to substitute our assessment for theirs.

The judgment is affirmed.

All concur.