William SANDERS, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2008–SC–000118–MR.

Supreme Court of Kentucky.

Jan. 21, 2010.

Steven Jared Buck, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, Bryan Darwin Morrow, Office of the Attorney General, Frankfort, KY, Counsel for Appellee.

## MEMORANDUM OPINION
## OF THE COURT

Appellant, William Sanders, was convicted by a Jessamine Circuit Court jury of first-degree robbery and of being a first-degree persistent felony offender. For these crimes, Appellant received a total sentence of 22 years' imprisonment. Appellant now appeals to this Court as a matter of right. Ky. Const. § 110(2)(b).

Appellant asserts three arguments on appeal: (1) the trial court's jury instruction on first-degree persistent felony offender was erroneous because it allowed the jury to convict him of that offense based on his conviction for possession of drug paraphernalia, second offense; (2) the trial court erred in not granting his request for a lesser included offense instruction on theft by unlawful taking, value $300 or more; and (3) he was prejudiced by the admission of a letter, which he claims was not authenticated. For the reasons set forth herein, we now reverse Appellant's conviction for being a first-degree persistent felony offender and remand to the Jessamine Circuit Court for a new penalty phase trial. We affirm Appellant's conviction for first-degree robbery.

On March 24, 2007, Appellant robbed Steven Armstrong. At trial, Armstrong and Jennifer Sebastian testified that the robbery occurred while the three were riding together in a car. At some point, Appellant pulled out a knife and held it to Armstrong's throat. Once the driver, Sebastian, stopped the car, Appellant took Armstrong's money, knife, cell phone, and glasses. After the robbery, Appellant ordered Sebastian to drive him to Lexington. Armstrong went to the Jessamine County Detention Center where he reported the crime.

Appellant's testimony at trial was substantially different from that of Armstrong and Sebastian. Appellant testified that he, Armstrong, and Sebastian smoked crack cocaine together. Appellant further testified that when they ran out of crack, Armstrong gave him money to purchase more crack cocaine and took him to a house where he could obtain it. Appellant purchased the crack cocaine but began to smoke it without Armstrong. Armstrong became angry with Appellant for beginning to smoke the crack without him. Appellant testified that the two had a fight because Armstrong believed Appellant effectively stole crack cocaine from him. Appellant believes that the robbery

charges are Armstrong's revenge for that disagreement.

## I. *APPELLANT'S CONVICTION FOR PERSISTENT FELONY OFFENDER FIRST DEGREE WAS IMPROPER BECAUSE IT WAS PREDICATED ON THE PRIOR OFFENSE OF POSSESSION OF DRUG PARAPHERNALIA, SECOND–OFFENSE.*

■ Appellant first argues that the trial court's jury instruction for first-degree persistent felony offender was incorrect because it allowed the jury to convict him based on his prior conviction for possession of drug paraphernalia, second offense. KRS 532.080(8) clearly states that "[n]o conviction, plea of guilty, or *Alford* plea to a violation of KRS 218A.500 shall bring a defendant within the purview of or be used as a conviction eligible for making a person a persistent felony offender." KRS 218A.500 deals with the crime of possession of drug paraphernalia. Appellant did not object to the jury instruction at trial.

In its brief, the Commonwealth concedes that the inclusion of Appellant's prior conviction for possession of drug paraphernalia, second offense, was error. However, the Commonwealth argues that the error is harmless because evidence was presented at trial that Appellant was convicted of four other felonies, any of which would have qualified him for persistent felony offender status.

Our prior case law holds that it is error to convict a defendant of a crime when the jury has not been properly instructed on the elements of the crime. *See Varble v. Commonwealth,* 125 S.W.3d 246 (Ky.2004) (reversing defendant's conviction for manufacturing methamphetamine because the jury had actually been instructed on the lesser offense of possession of drug paraphernalia); *Harper v. Commonwealth,* 43 S.W.3d 261 (Ky.2001) (reversing defendant's conviction for complicity because

the jury was not instructed on the element of intent). We noted in the recent decision of *Harp v. Commonwealth,* 266 S.W.3d 813, 818 (Ky.2008), that an erroneous jury instruction is presumed to be prejudicial; and a party claiming such an error to be harmless bears the heavy burden of showing that no prejudice resulted from it. While setting a high standard for the proponent of harmless error, *Harp* does leave that possibility open. *Harp,* however, involves true instructional error in that the jury instructions lacked sufficient detail to permit the jury to distinguish multiple charges from one another.

Although the arguments here are couched in terms of instructional error, we find the problem to be one of substantive criminal law: the legislature has expressly forbidden any conviction for persistent felony offender from using possession of drug paraphernalia as one of the underlying offenses. That is exactly what happened here. The wording of the jury instruction, on its face, is fine. The problem is that the crime of first-degree persistent felony offender cannot be established by proving a prior conviction under KRS 218A.500. The General Assembly has clearly and unequivocally decided that a persistent felony offender conviction shall not be based upon a prior violation of KRS 218A.500.

The Commonwealth argues that because the evidence at trial proved four other prior felony convictions, any two of which would support a conviction for first-degree persistent felony offender, the error was harmless. Despite the apparent credibility of the evidence of prior convictions, we noted in *Medley v. Commonwealth,* 704 S.W.2d 190 (Ky.1985) (*quoting from Adkins v. Commonwealth,* 647 S.W.2d 502, 506 (Ky.App.1982)), that in a persistent felony offender case, "[a] jury is entitled to disbelieve evidence of prior convictions put

on by the Commonwealth." We cannot presume, therefore, that the specific prior offenses enumerated in the instruction made no difference to the jury.

Furthermore, KRS 532.080, the statute that defines the offense of persistent felony offender, expressly forbids a conviction for persistent felony offender to be based on a violation of KRS 218A.500. The conviction obtained in this case directly violates the statute that defines the crime itself and cannot stand. Because (1) the PFO conviction is improperly predicated on a crime expressly excluded from PFO considerations by statute; (2) the presumption that errors in jury instructions are prejudicial; and (3) the fact that Sanders was, in fact, convicted of being a first-degree persistent felony offender and received more than the minimum sentence for that offense, the error is palpable error, and Sanders is entitled to relief despite his lack of preservation of this issue. *See* RCr 10.26. So we reverse the Appellant's conviction for being a first-degree persistent felony offender and remand this matter to the Jessamine Circuit Court for a new penalty phase trial.[1]

## II. *THE EVIDENCE DID NOT SUPPORT A JURY INSTRUCTION ON THE LESSER INCLUDED OFFENSE OF THEFT BY UNLAWFUL TAKING, VALUE $300 OR MORE.*

■ Appellant next argues that he should have received a jury instruction on the offense of theft by unlawful taking, value of $300 or more, as a lesser-included

offense to first-degree robbery. *See Roark v. Commonwealth,* 90 S.W.3d 24, 38 (Ky.2002) (holding that theft by unlawful taking is a lesser included offense of robbery). Appellant tendered such an instruction, but it was not given to the jury. Appellant believes he was entitled to such an instruction because a jury could have believed that Appellant took Armstrong's property without using force.

■ "In a criminal case, it is the duty of the trial judge to prepare and give instructions on the whole law of the case, and this rule requires instructions applicable to every state of the case deducible or supported to any extent by the testimony." *Taylor v. Commonwealth,* 995 S.W.2d 355, 360 (Ky.1999). However, the trial court has no duty to instruct on theories of the case that are not supported by the evidence. *Payne v. Commonwealth,* 656 S.W.2d 719, 721 (Ky.1983). The trial court's decision not to give a jury instruction is reviewed for abuse of discretion. *Williams v. Commonwealth,* 178 S.W.3d 491, 498 (Ky.2005).

In this matter, the evidence did not support a jury instruction on the offense of theft by unlawful taking, value $300 or more. Armstrong and Sebastian testified that Appellant held a knife to Armstrong's throat and demanded his property. Appellant testified that he did not take Armstrong's property but that all of his charges were fabricated by Armstrong as revenge for a drug purchase gone wrong.

---

1. It would have been better practice for the jury to have been instructed to return a recommended sentence on the robbery conviction before the PFO charge and any consequent PFO-enhanced sentence. *Commonwealth v. Reneer,* 734 S.W.2d 794, 798 (Ky. 1987) ("If the accused is also charged as a persistent felony offender, the penalty phase and a persistent felony offender phase can be combined ... and the jury in the combined bifurcated hearing could be instructed to (1) fix a penalty on the basic charge in the indictment; (2) determine then whether the defendant is guilty as a persistent felony offender, and if so; (3) fix the enhanced penalty as a persistent felony offender."). On remand, the trial court should instruct the jury in accordance with the procedure outlined in *Reneer.*

No testimony or evidence was presented that Appellant took Armstrong's property without the use of force. Thus, an instruction based on theft by unlawful taking, value $300 or more, is unsupported by the evidence; and the trial court did not abuse its discretion in rejecting such an instruction.

III. *THE NOTE THE COMMON-WEALTH ADMITTED INTO EVIDENCE WAS ADEQUATELY AUTHENTICATED.*

■ Finally, Appellant argues that the Commonwealth introduced a note, purportedly authored by Appellant, into evidence without adequate authentication. Appellant did not preserve this alleged error so we will review it for palpable error. RCr 10.26. At trial, Sebastian testified that she was given a note by a jail guard, who told her it was written by Appellant. The note read:

> Hey girl, they are trying to get me forty years over this shit. I[f] (sic) ask by anyone, he gave me the money to buy crack and I didn't come back. That is all you know. Dropped me at the school building, dropped him off on Brown or something. Call Santos [Appellant's brother].

Sebastian then testified that she called Santos, who asked her if she was going to testify against Appellant. Sebastian testified at trial that she did not know what Appellant's handwriting looked like but knew the note was from Appellant because of its contents. Appellant cross-examined Sebastian regarding the note. When Sebastian could not answer certain questions, Appellant requested that Sebastian produce the note. Sebastian produced the note, and the Commonwealth moved that it be admitted into evidence. Appellant did not object, and the trial court admitted the note.

■ KRE 901(b)(4) states that authentication can occur through the: "appearance, contents, substance, internal patterns, or other distinctive characteristics [of the writing], taken in conjunction with circumstances." This rule is "flexible and far-reaching" in allowing circumstantial evidence to authenticate a writing. LAWSON, *THE KENTUCKY EVIDENCE LAW HANDBOOK.* § 7.05(5) (4th ed. 2003). The burden on the proponent of authentication is slight; only a prima facie showing of authenticity is required. *Johnson v. Commonwealth,* 134 S.W.3d 563, 566 (Ky.2004). Several federal cases, using FRE 901,[2] provide guidance as to what types of circumstantial evidence could be used to authenticate a writing. *See United States v. McGlory,* 968 F.2d 309, 329–31 (3d Cir. 1992) (allowing the authentication of a handwritten note purportedly signed by-defendant without any direct testimony that it was the defendant's handwriting based on where the letter was found and the contents of the letter); *United States v. McMahon,* 938 F.2d 1501, 1508–09 (1st Cir.1991) (authenticating a note as written by the defendant based on testimony that he delivered it to someone else and that the letter contained information of interest to him and the recipient). We review the decision of the trial court for an abuse of discretion. *Johnson,* 134 S.W.3d at 566.

In this matter, there was adequate circumstantial evidence to authenticate the writing. Sebastian testified that a prison guard gave her the note, stating that it was written by Appellant.[3] The note in-

---

2. Kentucky Rules of Evidence (KRE) 901 is based on Federal Rules of Evidence (FRE) 901.

3. We will not determine whether Sebastian's testimony regarding the prison guard's statements was hearsay because that issue was not raised by the parties.

cluded references to the charges facing Appellant and instructions to call his brother. When Sebastian called Appellant's brother, the brother gave her information relating to her testimony at trial. All of these circumstantial facts together provide adequate evidence that Appellant, in fact, did author the note. The trial judge did not abuse his discretion in allowing the admission of this note into evidence.

### IV. *CONCLUSION.*

For the foregoing reasons, the judgment and sentence of the Jessamine Circuit Court regarding the first-degree persistent felony offender conviction is reversed; and this matter is remanded to the trial court for a new penalty phase trial. We affirm Appellant's conviction for first-degree robbery.

All sitting. MINTON, C.J.; ABRAMSON, CUNNINGHAM, NOBLE and SCHRODER, and VENTERS, JJ., concur.

SCOTT, J., concurs, in part, and dissents, in part, by separate opinion.

SCOTT, J., concurring, in part, and dissenting, in part.

Although I concur with the majority on all other issues, I must respectfully dissent on Issue I for reasons the error was harmless. You can never have "palpable error," if the error is—as it was here—harmless. Here, four (4) other felony convictions of Appellant were in evidence—none of which were even questioned. Thus, the fact that the trial court erroneously used a fifth (possession of drug paraphernalia) was plainly harmless. What I fear we are doing here is creating a class of palpable error, which is even lower than preserved error. For that reason, I must dissent as to the "palpable error" issue.